UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVIS WARD,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al.,<br><br>　　　　Defendants. | Case No. 1:24-cv-00467-JLT-BAM<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DEFENDANT'S MOTION TO DISMISS ALL CLAIMS FOR FAILURE TO STATE A CLAIM<br><br>(Doc. 16) |

　　　　Plaintiff Travis Ward, a state prisoner represented by counsel, initiated this action on April 17, 2024. (Doc. 1.) The matter proceeds on Plaintiff's First Amended Complaint for violation of the Americans with Disabilities Act ("ADA") and negligence against the California Department of Corrections and Rehabilitation ("CDCR") and DOE Officers. (Doc. 15.) Plaintiff alleges that while confined at Kern Valley State Prison ("KVSP") in Delano, California, he fell and injured his leg and back due to defendants' failure to remedy sewage water puddled outside his cell. Plaintiff also alleges that he received inadequate medical care after the fall. CDCR moves to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Doc. 15.) The motion was referred to the undersigned for the preparation of findings and recommendations. (Doc. 18.)

　　　　Having considered the moving papers, opposition, and reply, and for the reasons set forth

1

below, the Court will recommend that CDCR's motion to dismiss be granted without leave to amend.

## I. Summary of First Amended Complaint (FAC)

In December 2022, while incarcerated at Kern Valley State Prison ("KVSP") in Delano, California, Plaintiff reported the presence of sewage water puddled outside of his cell, which had apparently existed due to a leak in the chase unit next to Plaintiff's cell. Despite Plaintiff's written notification to CDCR staff and administration that the pooling of this sewage water presented an openly dangerous condition to Plaintiff and other inmates and personnel at KVSP, no measures were taken to remedy this situation. (FAC ¶ 16.)

Plaintiff was, and remains, a qualified and recognized individual with an ADA disability. Plaintiff's designation is contained and reflected in his inmate file. Plaintiff was a designated ADA inmate and provided a yellow vest, which he wears upon leaving his cell. (FAC ¶ 16.) Plaintiff claims that KVSP personnel had direct that knowledge that Plaintiff was particularly sensitive and susceptible to the dangerous water condition "since he was an acknowledged ADA inmate with a foot disability; and that he wrote numerous complaints about the dangerous hazard outside his cell." (*Id.*)

On May 16, 2023, after he left his cell on his way to work, Plaintiff slipped on the sewage water outside of his cell and fell onto the concrete pavement. "After losing consciousness and laying prone for about seven minutes," Plaintiff was transported away on a medical stretcher to the KVSP medical facility. (FAC ¶ 18.) Plaintiff claims he injured his back and leg. (*Id.* ¶¶ 23, 32.)

After the May 16, 2023 incident, Plaintiff claims that he was denied "proper medical treatment, including professional medical care, imaging tests, medications, and the use of wheelchair." (FAC ¶ 19.) Plaintiff was told to continue using a cane, which he was using on the day of the incident, and told he would not be given a wheelchair. Since the incident, Plaintiff has continued to request "proper medical treatment, including an MRI, additional therapeutic treatment and a wheelchair, but all such requests have been denied." (*Id.*) Plaintiff's complaints were ignored. He was forced to miss work and his college courses as the result of defendants'

actions. (*Id.*)

The FAC includes two claims: (1) violation of the ADA; and (2) negligence. (FAC ¶¶ 20-25, 26-39.) Plaintiff seeks compensatory damages and injunctive relief. (FAC at 11.)

**II.     Legal Standard**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim, and dismissal is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quotation marks and citations omitted). A court may only consider the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (quotation marks omitted); *Conservation Force*, 646 F.3d at 1242; *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true the allegations of the complaint in question, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and construe the pleading in the light most favorable to the plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Meek v. County of Riverside*, 183 F.3d 962, 965 (9th Cir. 1999). However, the court need not credit "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *See Twombly*, 550 U.S. at 555.

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

### III.  Discussion and Analysis

CDCR contends that the FAC fails to state a claim for a violation of the ADA because Plaintiff fails to aver that he was discriminated against by reason of his disability. CDCR further contends that Plaintiff's request for injunctive relief is moot, and his negligence claim is barred by immunities afforded by the California Government Claims Act. (Doc. 16-1.)

### A.  Violation of the ADA

The ADA provides, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA defines "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." *Id.* § 12131(2). The Supreme Court has held that "public entity" includes state prisons.[1] *United States v. Georgia*, 546 U.S. 151, 154 (2006) (citation omitted).

In order to state a claim under the ADA, a plaintiff must allege four elements: (1) he "is an individual with a disability;" (2) he "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) he "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his] disability." *McGary v. City of Portland*, 386

---

[1] To the extent Plaintiff purports to sue the individual DOE defendants for violation of his rights under the ADA, he may not "bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA." *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002).

F.3d 1259, 1265 (9th Cir. 2004) (alteration in original) (quoting *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002)).

The Court agrees with CDCR that Plaintiff does not allege facts that show he was excluded from participation in, or denied the benefits of, any service or programs offered by the prison because of a disability, or that he was subjected to any type of discrimination by reason of a disability. While Plaintiff alleges that he was "an acknowledged ADA inmate with a foot disability," he does not allege what service, program, or activity he was excluded from participating in or which benefit he was denied because of his disability. Plaintiff also does not allege facts evidencing any discrimination by reason of his disability.

In the FAC, Plaintiff alleges that defendants discriminated against him in violation of the ADA "by failing to remedy the leak and collection of sewage water outside of his cell." (FAC ¶ 23.) However, Plaintiff's allegations indicate that he was able to enter and exit his cell without incident for at least four or five months, between December 2022 and May 16, 2023. (FAC ¶¶ 16, 18.) Moreover, Plaintiff alleges that "the pooling of this sewage water presented an openly dangerous condition" not only to Plaintiff, but also to "other inmates and personnel at KVSP." (FAC ¶ 16.) In other words, the condition that Plaintiff encountered was the same condition that other inmates and staff were subjected to and encountered. This belies any assertion that Plaintiff was discriminated against by reason of his disability or that he was treated differently because of his disability.

Plaintiff also alleges that defendants further violated his rights under the ADA "by refusing to provide him with a wheelchair to use after he slipped and fell onto the sewage water on May 16, 2023, seriously injuring his back." (FAC ¶ 23.) In opposing the motion to dismiss, Plaintiff argues that he was deprived of adequate medical services after the initial slip and fall injury, including denial of a wheelchair and other medical treatment. (Doc. 22 at 2-3, 6.) To the extent Plaintiff's allegations relate to inadequate medical care or the denial of specific medical treatment after his fall, they do not state a claim under the ADA. The ADA prohibits discrimination because of disability; it does not create a remedy for inadequate medical care or malpractice. *See Henderson v. California Dep't of Corr. & Rehab.*, No. 2:23-cv-01598-JDP

5

(PC), 2023 WL 7287007, at *1 (E.D. Cal. Nov. 2, 2023); *see also Simmons v. Navajo County*, 609 F.3d 1011, 1022 (9th Cir. 2010) ("The ADA prohibits discrimination because of disability, not inadequate treatment for disability."); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice."). Plaintiff does not include allegations that he was denied specific medical devices or treatments because of his disability. *Reed v. Fox*, No. 2:19-cv-0275 AC P, 2023 WL 6930802, at *7 (E.D. Cal. Oct. 19, 2023), report and recommendation adopted, No. 2:19-cv-00275-DJC-AC-P, 2024 WL 1304961 (E.D. Cal. Mar. 27, 2024) (concluding prisoner did not state basis for relief under the ADA where allegations did not support an inference that the failure to provide requested devices was because of prisoner's disabling condition); *Torres, v. Kamen*, No. 1:21-cv-01503-ADA-CDB (PC), 2023 WL 11828315, at *7 (E.D. Cal. Jan. 26, 2023) (concluding prisoner failed to state cognizable ADA claim where prisoner asserted "no facts alleging Defendants denied him ADA appliances or medical care *because of his disability*").

Based on the above, the Court finds that the FAC fails to state a cognizable claim for relief under the ADA.

## B. Injunctive Relief

CDCR asserts that Plaintiff's claim for injunctive relief may be moot because Plaintiff is no longer housed at KVSP. (Doc. 16-1 at 7.) CDCR cites its own records, which revealed that at the time of filing Plaintiff was housed at the Substance Abuse Treatment Facility and State Prison, Corcoran. (*Id.*) A recent search of CDCR's inmate locator confirms CDCR's assertion that Plaintiff is no longer housed at KVSP.[2] Plaintiff's counsel also has not challenged this assertion or demonstrated a reasonable expectation that Plaintiff will return to KVSP. Therefore, any injunctive relief Plaintiff seeks against the officials at KVSP is moot. *See Andrews v.*

---

[2] The Court may take judicial notice of public information stored on the CDCR inmate locator (California Incarcerated Records & Information Search) website. *See In re Yahoo Mail Litig.*, 7 F. Supp. 3d. 1016, 1024 (N.D. Cal. 2014) (court may take judicial notice of information on "publicly accessible websites" not subject to reasonable dispute); *Louis v. McCormick & Schmick Restaurant Corp.*, 460 F. Supp. 2d. 1153, 1155 n.4 (C.D. Cal. 2006) (court may take judicial notice of state agency records).

*Cervantes*, 493 F.3d 1047, 1053 n.5 (9th Cir. 2007) (prisoner's claims for injunctive relief generally become moot upon transfer) (citing *Johnson v. Moore*, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam) (holding claims for injunctive relief "relating to [a prison's] policies are moot" when the prisoner has been moved and "he has demonstrated no reasonable expectation of returning to [the prison]")).

### C. Negligence

CDCR argues that it is immune from Plaintiff's negligence cause of action under the California Government Claims Act ("Act"). (Doc. 16-1 at 7.) First, CDCR contends that pursuant to Government Code 815(a), it is immune from state tort claims absent a specific statutory exception, which Plaintiff fails to identify. (*Id.* at 8.) Second, CDCR contends it is immune from suit for injuries to prisoners under Government Code § 844.6, which provides that unless an enumerated exception applies, "a public entity is not liable for . . . [a]n injury to any prisoner." Cal. Gov't Code § 844.6(a)(2). Third, CDCR contends that it is immune from suit for premises liability, citing Government Code § 845.2, which provides that "neither a public entity nor a public employee is liable for a failure to provide a prison, jail or penal or correctional facility, or, if such facility is provided, for failure to provide sufficient equipment, personnel or facilities therein." Cal. Gov't Code § 845.2

In his opposition, Plaintiff clarifies that his negligence claim is "a claim based on dangerous condition of property" controlled by a public entity and "liability under Government Code, Section 835 is alleged." (Doc. 22 at 6-7.) The Court therefore limits its discussion to this claim.

In relevant part, section 835 of the California Government Code states:

> [A] public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:
>
> (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or
>
> (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken

7

measures to protect against the dangerous condition.

Cal. Gov't Code § 835.  However, the California Government Code provides that, other than certain exceptions, a public entity is not liable for injury to a prisoner due to a dangerous condition of public property. Cal. Gov't Code § 844.6(a)(2) and (c); *see also Whatley v. Cisneros*, No. 1:22-cv-00270-CDB, 2024 WL 4480208, at *6 (E.D. Cal. Oct. 11, 2024), report and recommendation adopted, No. 1:22-cv-0270 JLT CDB, 2024 WL 4668088 (E.D. Cal. Nov. 4, 2024); *Cook v. County of Contra Costa*, No. 15-CV-05099-TEH, 2015 WL 9204292, at *2 (N.D. Cal. Dec. 17, 2015) ( "[P]ursuant to California Government Code section 844.6(a)(2), a public entity is immune from a prisoner's claim for injuries arising from negligence or a dangerous condition of public property.").  By enacting this statute, the Legislature intended that prisons be immune from claims by prisoners due to a dangerous condition of public property. *Whatley*, 2024 WL 4480208, at *6 (citing *Badiggo v. County of Ventura*, 207 Cal. App.3d 357, 361 (1989)).

Although Plaintiff cites numerous cases in support of his position that a public entity may be liable for a dangerous condition of public property, those cases did not involve claims from a prisoner.  (Doc. 22 at 7.)  For instance, Plaintiff cites *Martinez v. City of Beverly Hills*, 71 Cal. App. 5th 508, 514 (2021), which involved a plaintiff walking through an alley in the City of Beverly Hills, but did not involve claims from a prisoner.  Similarly, the cases of *Carson v. Facilities Development Company*, 36 Cal. 3d 830 (1984), *State v. Superior Court of San Mateo County*, 263 Cal. App. 2d 396 (1968), and *Curtis v. State of California*, 128 Cal. App. 3d 668, 693 (1982), did not involve prisoners.

CDCR acknowledges an exception to immunity in a prisoner claim for negligence where the prison employee knows or has reason to know that a prisoner is in need of immediate medical care.  (Doc. 26 at 4.)  California Government Code § 845.6 sets forth this exception. It states:

> Neither a public entity nor a public employee is liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his custody; but, except as otherwise provided by Sections 855.8 and 856, a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care.

8

Cal. Gov't Code § 845.6.

"Section 845.6 'does not impose a duty to monitor the quality of care provided.'" *Noriega v. County of San Bernardino,* No. ED CV24-00170 JAK (DTBX), 2024 WL 4799131, at *4 (C.D. Cal. Sept. 19, 2024) (quoting *Frary v. County of Marin*, 81 F. Supp. 3d 811, 842 (N.D. Cal. 2015). Rather, the duty is limited to cases "where there is *actual or constructive knowledge* that the prisoner is in need of *immediate* medical care." *Noreiga*, 2024 WL 4799131, at *4 (citations and internal quotations omitted).

Plaintiff does not allege that he was denied immediate medical care after his fall. To that end, the FAC alleges that Plaintiff was "transported away on a medical stretcher to the KVSP medical facility" about seven minutes after his fall. (FAC ¶ 18.) Instead, Plaintiff alleges that it was only after the May 16, 2023 fall that he "has been denied proper medical treatment." (FAC ¶¶19, 23.)

### D. Leave to Amend

Pursuant to Rule 15 of the Federal Rules of Civil Procedure, leave to amend should be freely given "when justice so requires," and courts are guided by "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez*, 203 F.3d at 1127 (alterations and internal quotation marks omitted). The Ninth Circuit has repeatedly held that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). In this instance, it does not appear that the pleading deficiencies identified above can be cured by further amendment. Accordingly, the Court will recommend dismissal of this action without leave to amend.

### IV. Conclusion and Recommendation

Based on the above, it is HEREBY RECOMMENDED as follows:

1. CDCR's motion to dismiss (Doc. 16) be granted.

2. Plaintiff's first amended complaint be dismissed without leave to amend.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within

**fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Objections, if any, shall not exceed fifteen (15) pages or include exhibits. Exhibits may be referenced by document and page number if already in the record before the Court. Any pages filed in excess of the 15-page limit may not be considered.** The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **January 16, 2025**          /s/ Barbara A. McAuliffe
                                     UNITED STATES MAGISTRATE JUDGE